UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Tammy L. Savage,

    Plaintiff,

v.                                                 Civil Action No. 2:13-cv-85

Commissioner of Social Security,

    Defendant.

**<u>OPINION AND ORDER</u>**
(Docs. 9, 12)

Plaintiff Tammy Savage brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits.  Pending before the Court are Savage's motion to reverse the Commissioner's decision (Doc. 9), and the Commissioner's motion to affirm the same (Doc. 12).  For the reasons stated below, the Court DENIES Savage's motion, and GRANTS the Commissioner's motion.

**<u>Background</u>**

Savage was 34 years old on her alleged disability onset date of December 5, 2007.  She completed school through the tenth grade.  She has worked as a nurse's aide and a cleaner.  She is a single mother with three children.  During the alleged disability period, she was a homemaker, living with her children and, at times, her boyfriend as well.

In December 2007, Savage slid and fell down some icy steps, resulting in severe back pain radiating down her leg. Since then, she has had chronic hip, buttock, leg, and lower back pain. She gained approximately 80 pounds after the fall, and is described in the medical record as being morbidly obese, weighing approximately 300 pounds at five feet, two inches tall. (AR 839, 876.) Savage also has pain in her left elbow and wrist, bilateral carpal tunnel syndrome ("CTS"), and sleeping problems. She takes Vicodin for her pain, and has tried multiple therapies to relieve her symptoms, including physical therapy, pool therapy, and injection therapy. Each method either did not relieve her symptoms or caused undesirable side effects. Savage's obesity exacerbates her symptoms; thus, her medical providers have recommended that she lose weight and regularly exercise. Although she has made attempts to follow these recommendations, she has been unsuccessful at sustaining a diet or exercise program. Aside from her physical problems, Savage has had anxiety since her father died in approximately 2005.

On January 5, 2010, Savage protectively filed applications for social security income and disability insurance benefits. In her disability application, she alleged that, starting on December 5, 2007, she has been unable to work due to lower back, thigh, and hip pain. (AR 186.) She testified at the administrative hearing that she also has pain in her sciatic nerve and right arm. (AR 45.) She further testified that, as a result of her pain, she can sit for only 20–30 minutes at a time, and she cannot use a computer. (AR 47–48.) Savage's application was denied initially and upon reconsideration, and she timely requested an administrative hearing. The hearing was conducted on July 26, 2011 by Administrative Law Judge ("ALJ") Dory Sutker. (AR 35–77.) Savage appeared and

testified, and was represented by an attorney.  A vocational expert ("VE") also testified at the hearing.  On August 9, 2011, the ALJ issued a decision finding that Savage was not disabled under the Social Security Act at any time from her alleged onset date through the date of the decision.  (AR 19–29.)  Thereafter, the Appeals Council denied Savage's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1–4.)  Having exhausted her administrative remedies, Savage filed the Complaint in this action on May 16, 2013.  (Doc. 1.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).  The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant

medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Sutker first determined that Savage had not engaged in substantial gainful activity since her alleged onset date of December 5, 2007. (AR 21.) At step two, the ALJ found that Savage had the following severe impairments: facet arthropathy of the lumbar spine, bilateral CTS, obesity, and tendonitis of the gluteus medius tendon and mild epicondylitis of the left elbow. (*Id.*) Conversely, the ALJ found that Savage's right shoulder tendonitis and anxiety were non-severe. (AR 22–24.) At step three, the ALJ found that none of Savage's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 24.) Next, the ALJ determined that Savage had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), except that she "should never climb ladders, ropes[,] or scaffolds[;] . . . should avoid concentrated exposure to vibrations and hazards[;] . . . [and] can

4

frequently handle and finger." (*Id.*)  Given this RFC, the ALJ found that Savage was unable to perform her past relevant work as a nurse's assistant or a cleaner.  (AR 27.)  Finally, based on testimony from the VE, the ALJ determined that Savage could perform other jobs existing in significant numbers in the national economy.  (AR 28.)  The ALJ concluded that Savage had not been under a disability from the alleged onset date of December 5, 2007 through the date of the decision.  (AR 29.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard."  *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial

5

evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

**I.     ALJ's Analysis of the Medical Opinions**

Savage contends the ALJ erred in her analysis of the medical opinions of treating physician Dr. Christine Northrup, treating physician Dr. Mary Flimlin, and non-examining agency consultant Dr. Patricia Pisanelli. For the reasons explained below, the Court finds no error.

**A.     Treating Physician Dr. Northrup**

In June 2010, Savage's treating physician, Dr. Christine Northrup, stated in a letter to Savage's counsel that Savage "suffers from chronic severe low back pain due to morbid obesity and arthritis of the spine," and thus is unable to stand for more than 15 minutes at a time, sit for more than 30 minutes at a time, and walk for more than short distances. (AR 698.) Dr. Northrup further stated that Savage "is very limited . . . due to back pain, buttock pain, leg [pain,] and hip pain. I do not feel she can work full time."

(*Id.*)  In February 2011, Dr. Northrup completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" ("MSS") in which she opined that, in an eight-hour workday, Savage was capable of sitting for up to four hours, standing for up to two hours, and walking for up to one hour.  (AR 720.)  She stated that Savage could only occasionally perform fingering activities, and could never stoop or climb ladders or scaffolds.  (AR 721–22.)  Dr. Northrup further opined that Savage's impairments would cause her to be absent from work for more than four days each month.  (AR 724.)

Under the treating physician rule, a treating physician's opinion on the nature and severity of a claimant's condition is entitled to "controlling weight" if it is "well []supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(c)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 567–69 (2d Cir. 1993).  The deference given to a treating physician's opinion may be reduced, however, in consideration of other factors, including the length and nature of the physician's relationship with the claimant, the extent to which the medical evidence supports the physician's opinion, whether the physician is a specialist, the consistency of the opinion with the rest of the medical record, and any other factors "which tend to . . . contradict the opinion."  20 C.F.R. § 404.1527(c)(2)–(6); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  If the ALJ gives less than controlling weight to a treating physician's opinion, he must provide "good reasons" in support of that decision.  *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (internal quotation marks omitted).

Acknowledging that Dr. Northrup was a treating physician, and stating that her observations and findings "are not ignored and have been carefully considered," the ALJ opted against assigning controlling weight to Dr. Northrup's opinions. (AR 27.) The ALJ explained that these opinions are "conclusory in nature and fail to give explanations for the disabling limitations." (*Id.*) The ALJ also found that Dr. Northrup's opinions are regarding an issue reserved to the Commissioner, and not supported by the medical evidence of record. (*Id.*) Savage argues that these are not good reasons for the ALJ's "rejection" of Dr. Northrup's opinions. (Doc. 9-1 at 9.) But the ALJ did not reject Dr. Northrup's opinions; rather, she considered them and found that they "provid[ed] insight as to [Savage's] functional ability and how [Savage's disabling limitations] affect[ed] [her] ability to work." (AR 27.) Moreover, the ALJ gave "good reasons" for affording less than controlling weight to Dr. Northrup's opinions, and these reasons are supported by substantial evidence.

First, the ALJ found that Dr. Northrup's opinions are conclusory, meaning they are not supported by an explanation for Savage's alleged disabling limitations. (*Id.*) It was proper for the ALJ to consider whether Dr. Northrup's opinions are supported. The regulations provide: "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). Adhering to this principle, the Second Circuit has stated that a standardized form, such as the MSS used by Dr. Northrup here, "is only marginally useful for purposes of creating a meaningful and

8

reviewable factual record" if unexplained. *Halloran*, 362 F.3d at 31 n.2. Although Dr. Northrup cited some evidence in support of her opinions contained in the MSS, including EMG and MRI reports, the ALJ found that this evidence in fact did not support those opinions. (AR 27.) The ALJ accurately summarized the relevant evidence as follows:

> An MRI of April 24, 2008 showed some facet arthropathy but no impingement on the spinal cord or herniation . . . . Xrays of November 2009 were normal . . . . [Savage's] reflexes and motor function were normal[,] and sensory activity was intact . . . . A straight leg ra[i]sing test was negative[,] and passive range of motion was not painful . . . . An EMG was negative for sciatic nerve entrapment . . . .

(*Id.* (citing AR 452, 528, 664, 691, 754).) The cited evidence supports the ALJ's findings. (*See* AR 452 ("no significant joint or extraarticular abnormality or bone marrow abnormality"), 529 ("normal [EMG] study" with "no evidence of lumbar radiculopathy" and "no evidence of proximal sciatic nerve entrapment"), 664 ("[n]o fracture/compression deformity of malalignment" and "[s]tability in flexion and extension"), 691 ("facet hypertrophic arthropathy at a few levels," but "no evidence for degenerative disc disease or lateralizing compressive herniation"), 754 ("had an EMG . . . which does not reveal any nerve root entrapment[,] and . . . had a bone scan with SPECT imaging, which is negative for fracture"); *see also* AR 380 (Dr. Winokur stating in a January 2008 treatment note, "MRI is relatively reassuring").)

Second, the ALJ found that Dr. Norstrum's opinions are regarding an issue reserved to the Commissioner. (AR 27.) Although Savage contends the ALJ erred in failing to identify which of Dr. Norstrum's opinions she considered to be reserved to the Commissioner (Doc. 9-1 at 9), it is clear that the ALJ was referring to Dr. Norstrum's

statement in her June 2010 letter that Savage could not work full time (AR 27, 698). That statement is in fact a statement on an issue reserved to the Commissioner, as the regulations provide that "[a] statement by a medical source that [the claimant is] 'disabled' or 'unable to work,'" 20 C.F.R. § 404.1527(d)(1), is not a medical opinion but an "opinion[] on [an] issue[] reserved to the Commissioner because [it is an] administrative finding[] that [is] dispositive of [the] case; i.e., that would direct the determination or decision of disability," *id.* at § 404.1527(d). *See Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003) (holding that doctor's opinion that claimant was "'temporarily totally disabled'" was entitled to no weight, "since the ultimate issue of disability is reserved for the Commissioner").

Third, the ALJ found that Dr. Norstrum's opinions are not supported by the medical evidence of record. Certainly, this was a proper factor to consider in assessing the weight of Dr. Norstrum's opinions, as the regulations provide that a treating physician's opinions should be given controlling weight only if they are "not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(c)(2). The ALJ noted specific medical evidence which was inconsistent with Dr. Norstrum's opinions, as discussed above. Savage claims that the ALJ "ignored" the "well-established" diagnoses of facet arthropathy, gluteus medius tendinopathy, epicondylits, CTS, and morbid obesity. (Doc. 9-1 at 12.) But in fact, the ALJ explicitly considered these diagnoses, finding however that they did not support the severe level of impairment alleged. (AR 21, 26.) This was a proper finding, given that the mere diagnosis of a condition "says nothing about the severity of th[at] condition." *Higgs v. Bowen*, 880 F.2d

10

860, 863 (6th Cir. 1988).  Savage points to Dr. Thomas Zweber's notation that, on examination, Savage exhibited exquisite tenderness in her gluteal and hip area.  (Doc. 9-1 at 13 (citing AR 654–55).)  As discussed above, however, the record indicates that, although Savage complained of buttock and hip pain, she had full strength and range of motion, and only minor objective abnormalities.  (*See, e.g.*, AR 654–56, 691, 748, 827.)  Accordingly, treating sports medicine physician Dr. Rebecca Winokur found that Savage's hip pain was "out of proportion" to the injuries sustained in her fall and her MRI results (AR 452), and stated that she "[could not] figure out why [Savage's] pain [was] so severe" (AR 380).  Another treating physician, Dr. Sheldon Cooper, found that there was "no evidence of inflammatory changes in [Savage's] joints and very little in the way of osteoarthritis," but even if she did have osteoarthritis in her lower extremities, which was likely given her obesity, "it would not account for all of the various pains" she was reporting.  (AR 851.)  The ALJ was entitled to resolve the evidentiary conflict between the medical evidence and Savage's allegations regarding the severity of her pain.  *See Carroll v. Sec. of Health and Hum. Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) ("It is the function of the [Commissioner], not [the court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.").  And she was not required to accept Savage's complaints of plain without also considering whether they are supported by medical signs and findings.  *See Vella v. Comm'r of Soc. Sec.*, 394 F. App'x 755, 757 (2d Cir. 2010) ("[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques,

11

which show the existence of a medical impairment") (quotation omitted). As discussed in more detail below, the Court finds that the ALJ properly assessed the credibility of Savage's subjective complaints.

Savage argues that the ALJ should have explained her decision to reject Dr. Northrup's opinion that Savage could perform fingering activities only "occasionally" (AR 721), instead finding that Savage could perform these activities "frequently" (AR 24). (Doc. 9-1 at 10, 18–19.) But the ALJ explicitly stated that, although Savage had bilateral CTS and therefore could not climb ladders, ropes, or scaffolds and should avoid concentrated exposure to vibrations; she could "frequently handle and finger," given that she had full active range of motion, no atrophy, grossly intact sensation, negative Tinel's sign[1], and paresthesia[2] only at nighttime. (AR 27 (citing AR 748–49).) Savage cites two treatment notes which indicate that there was tenderness and swelling in her wrists and elbows. (Doc. 9-1 at 18 (citing AR 709, 842).) Those notes also indicate, however, that Savage had full range of motion and had been lifting weights, which may have contributed to her upper extremity pain. (AR 709.) The notes further state that Savage had grossly intact sensation and strong (though painful) hand grip. (AR 842.) Finally, the notes state that Savage was not taking Aleve regularly and was taking Vicodin only

---

[1] "Tinel's sign" is "a sensation of tingling, or of 'pins and needles,' felt at the lesion site or more distally along the course of a nerve when the latter is percussed." *Stedman's Medical Dictionary* 1772 (28th ed. 2006).

[2] A paresthesia is a "[a] spontaneous abnormal usually nonpainful sensation (e.g., burning, pricking)." *Stedman's Medical Dictionary* 1425 (28th ed. 2006).

rarely[3]; she was advised to take Aleve more regularly and on the same day as taking Vicodin, if necessary. (*Id.*; AR 709.) In further support of her finding that Savage could frequently handle and finger, the ALJ accurately noted Savage's testimony at the administrative hearing that she could button her blouse, use eating utensils, turn a doorknob, and pick up a small object off a table. (AR 25; *see* AR 54.)

Accordingly, the ALJ gave good reasons to afford only limited weight to Dr. Northrup's opinions, and substantial evidence supports that decision.

### B. Treating Physician Dr. Flimlin

Savage contends that the statements of treating physician Dr. Flimlin do not provide substantial evidence to reject Dr. Northrup's opinions. In treatment notes, Dr. Flimlin recorded that objective testing showed mostly normal results (AR 656, 758), and that Savage's pain could be generated by "sciatic nerve in light of her obesity" (AR 656). Dr. Flimlin recommended Weight Watchers for gradual weight loss. (*Id.*) In November 2009, Dr. Flimlin stated in a treatment note: "[Savage's] problem continues to be with generalized deconditioning, obesity[,] and poor endurance. I feel that she would truly benefit from [a] weight reduction program, [dietary counseling,] and [a] regular exercise program."[4] (AR 662.) Savage argues that the ALJ "place[d] considerable misplaced emphasis on Dr. Flimlin's report" and "misinterpreted Dr. Flimlin's statement" (Doc. 9-1

---

[3] In November 2008, Dr. Mary Flimlin recorded in a treatment note that Savage was "only requiring one [Vicodin] at bedtime[, and they] [m]ight consider tapering to every other night and then gradually discontinuing." (AR 365.) Approximately one year later, Dr. Flimlin recorded that Savage was "requiring Vicodin [only] very rarely at night." (AR 337.)

[4] January 2010 counseling notes record that Savage "acknowledged [the] need for exercise [and] weight reduction if she [was] truly going to move beyond [her physical pain]." (AR 387.)

at 13) that "[t]he only other generator of [Savage's] pain could possibly be sciatic nerve in light of her obesity" (AR 656).  But the ALJ's decision clearly reflects the ALJ's consideration and reasonable interpretation of this statement: "Dr. [Flimlin][5] reported that [Savage] complained of buttock[] and thigh pain but noted that her MRI was normal. [She] explained that the only other pain generator would be the sciatic nerve but the EMG was normal."  (AR 27 (citing AR 656).)  Dr. Flimlin identified no other possible source of Savage's pain, but referred Savage to an EMG/nerve conduction study.  (AR 656.)  That study, performed by Dr. Zweber, revealed "normal" results, with "no evidence of lumbar radiculopathy" and "no evidence of proximal sciatic nerve entrapment."  (AR 655.)

      Savage also argues that Dr. Flimlin recommended that Savage use a cane for ambulation.  (Doc. 9-1 at 14 (citing AR 637).)  The ALJ acknowledged this recommendation, but accurately stated that Savage testified at the administrative hearing that she "no longer used a cane to ambulate."  (AR 26; *see* AR 55.)  The ALJ also accurately noted that a February 2011 examination revealed "a wide-based and slow gait without [the] need for [an] assistive device."  (AR 26 (citing AR 748).)

      For these reasons, there was no error in the ALJ's analysis of Dr. Flimlin's opinions.

---

[5] The ALJ erroneously referred to Dr. Flimlin as "Dr. Turner" in her decision.  (Doc. 9-1 at 12 n.4, 13 n.5 (citing AR 27, 656).)  The error had no effect on the ALJ's decision.

### C. Agency Consultant Dr. Pisanelli

Next, Savage argues that the ALJ improperly relied on the opinions of the non-examining agency consultants, including Dr. Pisanelli. (Doc. 9-1 at 15–16.) In July 2010, Dr. Pisanelli opined that Savage was capable of light work but could walk and stand for only two-to-three hours at a time and should "change position and do some stretching exercises for [five] minutes every hour." (AR 625.) Dr. Pisanelli also opined that Savage had no limitations in handling and fingering activities. (AR 621.) Stating that she was "mindful" that the agency consultants had not treated or examined Savage, the ALJ gave "substantial weight" to their opinions. (AR 27.) The ALJ did not, however, adopt Dr. Pisanelli's opinions that Savage could do unlimited fingering activities, instead finding that Savage could do them only "frequently." (AR 24.)

Contrary to Savage's contention, the ALJ did not err in crediting some aspects of the agency consultant opinions while discounting others, as ALJs are entitled to accept certain portions of medical opinions while rejecting others. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Moreover, Savage was not harmed by the ALJ's failure to adopt Dr. Pisanelli's opinion that Savage had no limitations in her ability to perform fingering activities because the ALJ's RFC determination on this issue was more restrictive. (AR 24, 621.) Regarding Dr. Pisanelli's opinion that Savage was limited to two-to-three hours of standing/walking (AR 625), substantial evidence supports the ALJ's decision not to adopt that limitation and to instead find that Savage could perform the standing and walking requirements of light work, which requires "standing or walking, off and on, for a total of approximately [six] hours of an [eight]-hour workday,"

15

SSR 83-10, 1983 WL 31251, at *6 (1983).  For example, as discussed above, the medical records document that Savage had full range of motion and no need for an assistive device, and that she had complete resolution of her buttock/leg pain after an intraarticular hip injection.  (AR 654–56, 748, 827.)  Although in many cases it is proper for the ALJ to give reduced weight to the opinions of non-examining agency consultants in favor of the opinions of the examining medical providers; the regulations permit the opinions of non-examining agency consultants to override those of examining sources, where, as here, the former are more consistent with the record evidence than the latter.  *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (citing *Schisler v. Sullivan*, 3 F.3d 567–68 (2d Cir. 1993)) ("[T]he regulations . . . permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record."); SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996).  Here, substantial evidence supports the ALJ's determination that the opinions of the agency consultants are more consistent with the record than those of treating physician Dr. Northrup.

**II.     ALJ's Consideration of Combined Effects of Obesity and Other Impairments**

Savage next claims that the ALJ failed to consider the combined effects of her obesity and other impairments.  (Doc. 9-1 at 17–18.)  Social Security Ruling ("SSR") 02-1p discusses how ALJs should evaluate obesity claims and provides as follows: "The combined effects of obesity with other impairments may be greater than might be expected without obesity. . . .  As with any other impairment, [the Commissioner] will explain how [he or she] reached [his or her] conclusions on whether obesity caused any physical or mental limitations."  SSR 02-1p, 2000 WL 628049, at *6, *7 (Sept. 12, 2002).

16

The Sixth Circuit observed that SSR 02-1p does not mandate a particular mode of analysis in obesity cases: "It is a mischaracterization to suggest that [SSR] 02-01p offers any particular procedural mode of analysis for obese disability claimants." *Bledsoe v. Barnhart*, 165 F. App'x 408, 411–12 (6th Cir. 2006). And the Third Circuit explained that the standard for evaluating a claimant's obesity under SSR 02-1p is simple: "[A]n ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

Here, the ALJ explicitly cited SSR 02-1p, noting that it requires the Commissioner to "consider the effect of obesity when evaluating disability." (AR 26.) The ALJ also stated: "An individual assessment of [Savage] supports a finding of Level III obesity, which when considered in combination with her other impairments, produce nonexertional limitations consistent with those outlined in the body of this decision." (*Id.*) The ALJ discussed Savage's obesity throughout the decision, and specifically noted Savage's testimony at the administrative hearing that "she is 5'2" and . . . extremely obese[,] weighing 298 pounds resulting in a body mass index (BMI) of 54.5." (*Id.*) Savage fails to state any particular limitation(s) on her ability to work that allegedly was caused by her obesity alone or in combination with other impairments. Accordingly, the Court finds no error in the ALJ's consideration of Savage's obesity.

### III.  ALJ's Credibility Assessment and Consideration of Savage's Pain

Next, Savage argues that the ALJ used an incorrect legal standard in evaluating Savage's pain and limitation, resulting in an improper credibility assessment. More

17

specifically, Savage asserts that the ALJ improperly relied on the absence of objective evidence to support Savage's claim. As discussed above, however, the ALJ considered more than just the lack of objective medical evidence supporting Savage's allegations of pain: she also considered Savage's conservative treatment, including pool therapy and weight loss programs; extensive daily activities, including getting her children off to school each morning, preparing simple meals[6], traveling, and shopping[7]; and medical notations indicating that Savage retained full range of motion and strength. (AR 25–27 (citing AR 256–94, 307, 326, 452, 748–49).) Savage contends that the ALJ and the Commissioner failed to discuss particular evidence, including Savage's testimony that she does not do the dishes because it is too painful to stand, does not take showers because she cannot stand long enough, and cut her hair because she was unable to brush it. (*See* Doc. 17 at 11.) But the Second Circuit "do[es] not require that [the ALJ] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Campbell v. Astrue*, 465 F. App'x 4, 6 (2d Cir. 2012) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir.

---

[6] In an August 2009 treatment note, Savage is noted to be "independent in [activities of daily living] without difficulty," and described as a "homemaker," although she reported difficulty with household chores particularly vacuuming. (AR 342.)

[7] There is also evidence that Savage camped and fished during the alleged disability period. A July 2009 counseling note states that Savage "went camping w[ith her] family [and friends]." (AR 405.) An August 2009 physical therapy note states that Savage "enjoys camping and taking trips." (AR 342.) And a January 2010 treatment notes states that Savage reported that "she likes to go camping and fishing during the summer, however, she is mostly not doing any recreational activity during winter time *secondary to weather conditions*," indicating that the weather—not her impairments—prevented her from camping and fishing during the alleged disability period. (AR 334 (emphasis added).)

1981) (rejecting argument that the ALJ must explicitly reconcile every shred of conflicting testimony)).

It is the province of the Commissioner, not the reviewing court, to "appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir.1984). If the Commissioner's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints, even if substantial evidence supporting the claimant's position also exists. *See Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder."); *id.* at 127 ("Though [claimant's] position was . . . supported by the opinion of Dr. Holloman . . ., the ALJ was not compelled to credit that testimony over the testimony of Drs. Chiaramonte and Budow and the records of Dr. Friedman."). Here, the ALJ listed the appropriate credibility factors in her decision (AR 25), concluding that Savage's statements regarding the intensity, persistence, and limiting effects of her symptoms "are not credible to the extent they are inconsistent with the [RFC] assessment" (AR 26). The ALJ supported this conclusion with several specific findings, discussed above. Therefore, the ALJ did not err in her assessment of Savage's credibility.

## IV.     ALJ's Reliance on VE testimony

Finally, Savage argues that the ALJ "misheard or misunderstood" the VE's testimony regarding whether Savage's limitation to only frequent fingering and handling would have more than a minimal effect on the light unskilled job base. (Doc. 9-1 at 19.)

But the VE clearly testified that, even with a limitation to frequent handling and fingering, Savage would still be able to do the jobs of courier, office mail clerk, office helper, storage facility rental clerk, fast-food worker, and cashier, all of which existed in significant numbers in the national economy. (AR 60–64.) Savage does not argue that the number of these jobs would be eroded based on her fingering and handling limitations. Therefore, Savage has failed to identify any meaningful error in the ALJ's reliance on the VE testimony.

## **Conclusion**

For these reasons, the Court DENIES Savage's motion (Doc. 9), GRANTS the Commissioner's motion (Doc. 12), and AFFIRMS the decision of the Commissioner.

Dated at Burlington, in the District of Vermont, this 24th day of February, 2014.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge